**AMES SAFETY ENVELOPE CO. v. RANDELL et al.**

No. 4226.

District Court, D. Massachusetts.

May 28, 1937.

Morse, Kenny & Bell, Joseph P. Bell, and Everett S. Emery, all of Boston, Mass., for plaintiff.

Robert J. Keating and Roberts, Cushman & Woodberry, all of Boston, Mass., for defendants.

SWEENEY, District Judge.

This is a suit in equity in which the plaintiff alleges that the defendants infringe two of its patents. It seeks an injunction against further infringement, and an accounting of profits and damages. The defendants deny the validity of the patents, and deny infringement.

Statements of fact herein are intended as findings of fact, and statements of legal conclusions, as rulings of law, under the Equity Rules.

The plaintiff is the owner by assignment of patent No. 1,836,459, issued on December 15, 1931, which covers the receptive portion of an envelope lock, which will hereinafter be referred to as the female member. It is also the owner by assignment of patent No. 1,957,706, issued on May 8, 1934, which covers the inserted member of an envelope fastener or lock, which will hereinafter be referred to as the male member. In each patent, claim is made for the invention of the particular member to be used in combination with a conventional other member.

The defendant Randell is the principal defendant, and is charged with the manufacture and sale of the alleged infringing device. The defendant Peter Gray & Sons, Inc., is alleged to have manufactured the infringing device for Randall with knowledge of the plaintiff's rights, and after written notice from the plaintiff as to the alleged infringement. The defendant Clark is alleged to have financed Randell in the manufacture of the infringing device with knowledge, and after written notice from the plaintiff as to such infringements. It is further alleged that the defendant Clark is a partner or has an interest in the business of Randell. The defendant Griffin is alleged to be financially interested with the defendant Randell in the sale of the alleged infringing device.

When application was made for the patent No. 1,957,706, Randell, as the assignee of Griffin, contested the issuance of the patent in so far as priority or originality was concerned. On hearing before the Examiner of Interferences, and again on appeal to the Board of Appeals of the Patent Office, the plaintiff was sustained, and the patent was issued to him. There was no appeal from the decision of the Board of Appeals.

It is to be noted that in each of these patents the claims are combination claims; that is, in the patent for the female member, it is claimed that it was to be used in combination with a male member, and, in the application for the male member, it is claimed that it was to be used in combination with a female member.

The original applicant and the assignor of the plaintiff was employed in the United States Post Office Department for a great many years, and was impressed with the

614

necessity of having some arrangement on an envelope (principally those dealing with valuable matter) whereby the sender might seal or lock the envelope so that it could not be tampered with in transit, and so that it could not be opened without destroying the seal or lock. If tampered with while in transit, it was the desire to have a means whereby it could be readily noticed by any one handling the envelope.

The only claim in the patent for the female member reads as follows: "A locking fastener for envelopes comprising a receiver made of a single piece of stamped sheet material and having a flat annular outer portion with prongs on its outer periphery and an inner annular portion curved first upwardly and inwardly from the inner periphery of the outer annular portion, then downwardly and inwardly, and finally upwardly and inwardly, forming two concentric, reversely extending corrugations, the inner portion of the material having a knife edge, and said inner portion having narrow radial slots with parallel walls adjacent the knife edge to form extended knife edge bearings surfaces, said slots terminating in enlarged rounded openings extending into the lower portion of the intermediate inclined portion, in combination with a cooperating fastening element having a headed shank."

By his invention the plaintiff provided a receiving eyelet for a conventional stud which, when engaged with the stud, would hold it in place by means of reversely extending corrugations which would press against the barrel of the stud so tightly that it would prevent the withdrawal of the head of the stud through the opening through which it had entered. In design the plaintiff's invention was new. In practice and in theory it was old.

The defendant Griffin had been employed by the plaintiff's assignor to assist in making up a model of the article to be patented, and to assist in describing the device for the purpose of applying for the patent. After the patent was issued for the female member and prior to the issuance of the patent for the male member, Griffin disclosed to the defendant Randell the idea of making up the alleged infringing male device. Under an oral arrangement with Randell he was to receive 3 per cent. of the proceeds of the Randell patent if one was issued. No patent has been issued to Randell. No money has been received

by Griffin. He has not made or sold, either directly or indirectly, nor received the benefits of any sale or manufacture of, the alleged infringing device since the issuance of the second patent to the plaintiff, and I therefore find that the bill as to him should be dismissed.

The defendant Clark made loans of money to the defendant Randell in the amount of $3,000. There is no evidence that in making the loans Clark had any knowledge that the money was to be used for the purpose of making the alleged infringing device, or, if he did, that he had knowledge of any controversy between Randell and the plaintiff as to his rights to make such a device. They were outright business loans, and on the evidence I cannot find that Clark knowingly contributed to any of the alleged infringing actions. The bill as to Clark should be dismissed.

In October of 1932, the defendant Peter Gray & Sons, Inc., at the direction of Randell, made up the dies which were used to punch out the alleged infringing device. When these dies were completed, Peter Gray & Sons, Inc., manufactured the alleged infringing device for Randell under orders placed by him. Since November, 1933, Peter Gray & Sons, Inc., has had no further occasion to use the dies or to make further articles for Randell, and, in fact, in November of 1933, turned over to Randell all of its dies, equipment, and accessories pertaining to the alleged infringing device. It is clear that, if the patent on the female member is valid, the defendant Peter Gray & Sons, Inc., has infringed it. However, all infringement ceased in 1933, and there is a question in my mind whether this bill in equity ought to be retained against Peter Gray & Sons, Inc., since the plaintiff has a complete and adequate remedy at law for such infringement.

The validity of the first patent which is on the female member of the combination is questioned. As issued, the patent is a very narrow one. The original claims of Fitzgerald (five in number) were rejected by the Patent Office as being met by the prior art. After the final rejection of these claims, the plaintiff's assignor had a conference with the Examiner for the Patent Office, and, as a result, the present patent was issued. The novelty of his invention as claimed by the inventor consisted of two things: First, that the gripping portion of the female member had knifelike edges which gripped

the barrel of a conventional stud. Second, that the gripping portions were separated from each other by radial slots having parallel walls terminating in large rounded openings near the base of the member.

On June 19, 1900, patent No. 651,983 was issued to Stirckler for a female member of ·a fastener which had the gripping edges of the fastener separated by radial slots with parallel walls, and which terminated in enlarged rounded openings. Stirckler taught the use of such slots as an aid to effecting a holding by the female member of a stud inserted therein.

In 1884 Wuerfel had been issued patent No. 292,729 for a button composed of a female and male member interlocking in such a manner that, once the male member had passed through the opening of the female member, it was held in place by turned-up portions of the female member pressing against the barrel of the male member and under its head. Wuerfel also taught that the inner edges of the gripping portion could rigidly bite· the shank of the barrel of the male member in such a manner as would render it impossible to withdraw the male stud.

In 1892 a patent was granted to Denis, No. 479,975, which provided an arrangement similar to Wuerfel's, but applied to an envelope as a permanent seal. The gripping portion of the female member of the Denis patent was separated by narrow slots having parallel walls. They did not, however, terminate in rounded openings. It did, however, provide for knifelike edges "springing and lapping around the shank of the stem of the stud in the direction of the head and abutting against the inner plane surface of the latter (to) prevent the head from being withdrawn, thus securely and permanently fastening the envelope."

In view of the above, I am of the opinion that the plaintiff's claim in patent No. 1,836,459 is substantially anticipated by the patent to Stirckler in view of Wuerfel and Denis.

I am of the opinion that the contributions made by the plaintiff's assignor were contributions of skill rather than of inventive faculty. I ·therefore find and rule that patent No. 1,836,459 is invalid.

The second patent No. 1,957,706, which covers the male stud to be used in combination with the female receiver, reads as follows in the plaintiff's only claim: "In an envelope fastener, a stud member comprising a plate with fastening means thereon and a shank provided with an inwardly facing shoulder, there being a weakened breaking portion between said means and said· shoulder, in combination with an eye member having a snap irremovably engaging said shoulder."

In this device the plaintiff took a conventional stud, and by a series of perforations, between the means which fastened the stud to the envelope flap and the shoulder of the stud, arranged that, when the male member was engaged with the female member, any attempts to separate them forcibly, such as by using a screw driver or a knife, would cause the barrel of the stud to remain engaged in the female member but would have it split from the base which was attached to the envelope flap, and the line of perforations would be the breaking point. In other words, the defendant so weakened the male member as to cause it to break when force was applied to it. Such a break along the predetermined breaking line, being on the outside of the closed flap of the envelope, would be readily discernible to any person handling the envelope.

In 1909 patent No. 943,205 was issued to Wachtermann, whose purpose was to provide an envelope "wherein provision is made for preventing surreptitious access thereto." He provided a fastening device on an envelope having weakened or fracturable portions adjacent to the fastening device whereby the separation of the parts of the fastening device would mutilate the envelope. The weakening that Wachtermann provided was in the flap of the envelope itself, and obviously would take but little pressure to break it.

Street patent No. 1,815,016, granted July 14, 1931, shows a seal for envelopes where it is impossible to separate the cooperating parts without seriously mutilating the fastener.

There is no inventive faculty employed in doing what Wachtermann taught by changing it so as to place the breaking or weakened portion on the·base of the male stud. The same principle is involved in each, and, while the plaintiff's device may be an improvement over Wachtermann in that it will resist all of the ordinary force used in the handling of mail, without breaking, nevertheless such construction does not involve

inventive faculty, but is rather a result of skill and reasoning.

I find and rule that patent No. 1,957,706 is invalid.

A decree dismissing the bill may be prepared in accordance with the above.